COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





OMAR VENEGAS-ORTIZ,

                            Appellant,

V.

THE STATE OF TEXAS,

                            Appellee.

§
 
§
 
§
 
§
 
§
 
 §

 §


No. 08-08-00063-CR

Appeal from the

Criminal District Court No. 1
of El Paso County, Texas 

(TC# 20060D04972) 





O P I N I O N

            Appellant was convicted by a jury of the offense of possession, of a controlled substance,
400 grams or more, with intent to deliver. He was sentenced to 58 years’ imprisonment in the
Institutional Division of the Texas Department of Criminal Justice. On appeal, he raises four
issues, challenging the sufficiency of the evidence, the trial court’s denial of his motion to
suppress, and several aspects of the court’s charge to the jury. We affirm.
            On October 9, 2006, Detective Jose Lucero, and several other members of the El Paso
Police Department’s drug interdiction, DEA task force, approached a residence at 7448 Le Conte
in El Paso. Appellant was living at the house with a woman named, Frida Gonzalez. At
approximately 11:15 a.m., Detective Lucero witnessed Appellant drive away from the house in a
white Ford Ranger. The detective followed Appellant to the parking lot of a nearby fitness
center, where Appellant left the Ford Ranger and entered a four-door Mercury sedan. Appellant
then exited the sedan and proceeded into the gym, where he remained for approximately ninety
minutes. When he initially came out of the gym, Appellant went to the Ford Ranger. However,
Appellant than left the truck and drove away in the Mercury sedan.
            Detective Lucero followed Appellant back to the Le Conte house where he and the other
task force members conducted a “knock and talk” with Appellant. Detective Lucero and his
partner, Detective Sosa, identified themselves to Appellant, informed Appellant that the house
was the subject of a narcotics investigation, and asked Appellant for permission to search the
premises.


 Shortly thereafter, the team’s K-9 unit alerted to a trash bag and a gun safe located in
the garage. Although Appellant continuously denied ownership of the safe, further investigation
demonstrated that the safe had been purchased by Appellant at an El Paso Sam’s Club through a
membership account in Appellant’s name. Upon opening the safe, the detective’s found
approximately 129 bundles of cocaine. Based on the quantity of cocaine recovered, and the way
the bundles were packaged, the detectives determined Appellant was involved in distribution of
narcotics.
            During the search, although the house was sparsely furnished, the detectives found
numerous items associated with packaging and distributing narcotics, such as cellophane, heat-seal wrapping, a food saver machine, and other packaging materials.


 The police also found a
ledger on a stand next to the bed in the master bedroom. The notations in the ledger
corresponded with an agenda binder also discovered in the house, and the officers concluded
these items were used to track the amount of cocaine being sold, and to calculate payments and
profits. They also located a brown paper bag with the number “129" noted on it, which
corresponded with the number of bundles discovered in the gun safe.
            Appellant was convicted of possession of a controlled substance, four hundred grams or
more, with intent to deliver on January 17, 2008. On appeal, he raises four issues for review. In
Issue One, Appellant challenges the legal and factual sufficiency of the evidence supporting his
conviction. In Issue Two, Appellant contends the trial court erred by denying his motion to
suppress. In Issues Three and Four, Appellant argues the trial court erroneously charged the jury
by including an improper “Allen” charge prior to deliberations, and by failing to include the
elements of the charged offense in the court’s written charge.
            In Issue Two, Appellant contends that the trial court erred in overruling his motion to
suppress the cocaine evidence. Appellant’s arguments under Issue Two are focused on the
cocaine discovered inside the gun safe. He argues that the officers violated his Fourth
Amendment rights by opening and searching the gun safe without a warrant. However, before
we address Appellant’s Fourth Amendment rights regarding the officers’ search of the safe, we
must first address whether Appellant has standing to raise the issue at all.
            The basis of all assertions of Fourth Amendment protection is proof of a “reasonable
expectation of privacy.” Kothe v. State, 152 S.W.3d 54, 59 (Tex.Crim.App. 2004). A defendant
seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that
he personally had a reasonable expectation of privacy that the government invaded. Id. He must
prove that he was a victim of the unlawful search or seizure. Kothe, 152 S.W.3d at 59. An
individual has no standing to complain about the invasion of someone else’s personal rights. Id. 
A court may only consider whether a substantive Fourth Amendment violation has occurred,
after the complainant establishes his privacy interest. Id. An appellate court may raise a standing
issue sue sponte on appeal. Id. at 60. Standing is a legal issue, which we review de novo. Id. at
59.
            As we have previously stated, Appellant’s Fourth Amendment claim is based on the
police’s search of the gun safe. However, at the suppression hearing there was substantial
testimony that Appellant denied ownership of the safe, and he has continued to deny such
ownership in post trial proceedings. During the suppression hearing, Detective Lucero testified
that when the officers asked Appellant to open the safe Appellant responded that he did not know
the combination. The detective then asked Appellant who the safe belonged to, and Appellant
indicated that it belonged to another individual named Rogelio Acevedo. The detective
instructed Appellant to call Mr. Acevedo to get the combination. Appellant dialed a number on
his personal cell phone, and seemed to tell the person on the other end of the call that the police
were at the house and wanted to know what was in the safe. Detective Lucero testified that the
phone call lasted no more that five to ten seconds.
            In a motion for new trial, apparently filed pro se, Appellant indicated that the narcotics
belonged to a “Frida Castanon,” who “was pleading hysterically with [him] after search and
discovery of the contraband, to claim the contraband was his and not hers.” Appellant also filed
an affidavit attached to an amended motion for new trial in which he states in relevant part:
I did not know there were any drugs where I was living with my girlfriend at the
tome [sic] of our arrest. The house where we were arrested belongs to my
girlfriend’s aunt. I was not occupying or using the garage on my girlfriend and
aunt’s orders. I never knew what was in the safe and had no access to it.

            Appellant presented no evidence at the suppression hearing to establish his standing to
contest the search of the safe. In fact, the only evidence attributable to Appellant on the issue of
standing are his repeated denials of ownership and access. Because Appellant failed to establish
that any injury to a privacy right which occurred via the officers’ search of the safe was his,
Appellant has failed to demonstrate his right to assert a motion to suppress in this instance. See
Luna v. State, 268 S.W.3d 594, 603-04 (Tex.Crim.App. 2008). Therefore, without addressing
the merits of the motion, we overrule Issue Two for lack of standing.
            In Issue One, Appellant challenges the legal and factual sufficiency of the evidence
supporting his conviction. In legal sufficiency review, we must consider all of the evidence in a
light most favorable to the verdict, and determine whether a reasonable minded juror could have
found the essential elements were proven beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Roberts v. State, 273 S.W.3d
322, 326 (Tex.Crim.App. 2008). We must give deference to “the responsibility of the trier of
fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.” Hooper v. State, 214 S.W.3d 9, 13
(Tex.Crim.App. 2007).
            In a factual sufficiency review, we consider all the evidence in a neutral light. Grotti v.
State, 273 S.W.3d 273, 283 (Tex.Crim.App. 2008). The purpose of the review is to answer a
single question: Considering all the evidence in a neutral light, was a jury rationally justified in
finding guilt beyond a reasonable doubt? Grotti, 273 S.W.3d at 283. Evidence is factually
insufficient if: (1) the evidence supporting the verdict is so weak that the verdict seems clearly
wrong and manifestly unjust; or (2) the evidence supporting the verdict is outweighed by the
great weight and preponderance of contrary evidence, rendering the verdict clearly wrong and
manifestly unjust. Grotti, 273 S.W.3d at 283. We cannot reverse a conviction under the “clearly
wrong” or “manifestly unjust” standards simply because, based on the quantum of evidence
admitted, we would have voted to acquit. Watson v. State, 204 S.W.3d 404, 417 (Tex.Crim.App.
2006). Nor can we declare that a conflict in the evidence justifies a new trial because we
disagree with the jury’s resolution of the conflict. Id. A new trial will only be granted when the
reviewing court determines, on an objective basis, that the great weight and preponderance of the
evidence contradicts the jury’s verdict. Id. In addition, our review should not substantially
intrude upon the fact finder’s role as the sole judge of the weight and credibility given to witness
testimony. Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); see also Marshall v. State,
210 S.W.3d 618, 625 (Tex.Crim.App. 2006)(factual sufficiency review still requires “due
deference” be given to the jury’s determinations).
            In a possession with intent to deliver case, the prosecution’s burden of proof consists of
three elements. See King v. State, 895 S.W.2d 701, 703 (Tex.Crim.App. 1995). State must
prove beyond a reasonable doubt that the accused: (1) exercised care, custody, control, or
management over the controlled substance; (2) intended to deliver the controlled substance to
another; and (3) knew that the substance in his possession was a controlled substance. See
Tex.Code Crim.Proc.Ann. art. 38.03 (Vernon Supp. 2009); Tex.Health & Safety Code
Ann. §§ 481.002(38), 481.112(a)(Vernon Supp. 2009). Appellant challenges the sufficiency of
the evidence in support of the first elements of the offense.
            Appellant argues that there is insufficient evidence to establish an affirmative link
between himself and the cocaine found in the gun safe. In order to prove that the accused had
knowledge of, and control over the contraband in cases where the accused is not in sole
possession of the location where the substance is found, there must be additional independent
facts and circumstances which link the accused to the contraband. See Evans v. State, 202
S.W.3d 158, 161-62 (Tex.Crim.App. 2006). Whether direct or circumstantial, the evidence must
establish the accused’s connection with the contraband was more than just fortuitous. Id. at 161. 
While the accused’s mere presence at the location where the drugs are found is insufficient to
establish possession, presence, when combined with other “affirmative links” between the
accused and the drugs, may well be sufficient to establish the element beyond a reasonable doubt. 
Id. at 162.
            The key to this type of possession inquiry is the “logical force” with which the evidence
supports an inference of conscious possession of contraband by the accused. See id. at 162;
Porter v. State, 873 S.W.2d 729, 732 (Tex.App.--Dallas 1994, pet. ref’d). Texas courts have
utilized a wide variety of factors to analyze the sufficiency of the evidence in support of the
jury’s affirmative finding of possession, including: (1) the defendant’s presence at the location
where a search warrant was executed; (2) whether the contraband was in plain view; (3) the
defendant’s proximity to and accessibility of the contraband; (4) whether the defendant was
under the influence of narcotics when arrested; (5) whether the defendant possessed other
contraband or drug paraphernalia when arrested; (6) whether the defendant made incriminating
statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant
made furtive gestures; (9) whether there was a residual odor of contraband; (10) whether the
defendant owned or had the right to posses the place where the drugs were found; (11) whether
the drugs were found in an enclosed area; (12) whether the accused was the operator of an
automobile where contraband was found; (13) whether the defendant was found with a large
amount of cash or weapons at the time of his arrest; (14) whether the conduct of the accused
indicated a consciousness of guilt; and (15) whether there was a significant amount of contraband
seized. See Evans, 202 S.W.3d at 162 n.12; Miramontes v. State, 225 S.W.3d 132, 141-42
(Tex.App.--El Paso 2005, no pet.).
            In this instance, the following evidence “links” Appellant to the cocaine: (1) Appellant
was the lessee, and a resident of the Le Conte house; (2) the house was sparsely furnished, an
indication, according to Detective Lucero, that the house was a drug stash house; (3) Appellant
purchased the gun safe through his personal membership at Sam’s club; (4) the gun safe was
located in the garage of Appellant’s house; (5) Appellant had convenient access to the safe; (6)
the access code, as discovered by the officers in the safe’s owner’s manual, was readily
accessible in the garage; (7) the presence of 129 bundles of cocaine in the safe, which according
to the officers, indicated that there was a drug delivery and distribution operation going on at the
residence; (8) the presence of wrapping and packaging materials in the residence such as trash
bags, rolls of cellophane, heat-seal plastics, twine and evidence of left-over wrapping from
bundles that had been opened on the premises; and (9) the presence of an accounting ledger,
which Detective Sosa testified showed the amount of drugs being sold and the amount of money
being taken in. In addition, as the fact finder and sole judge of credibility and weight to be given
testimony, the jury was free to disregard Appellant’s explanation to the officers that he did not
own the safe and was unable to open it because he did not have the combination. See Rushing v.
State, 141 S.W.3d 739, 742 (Tex.App.--El Paso 2004, no pet.), citing Cain v. State, 958 S.W.2d
404, 410 (Tex.Crim.App. 1997).
            In sum, having reviewed the record in the light most favorable to the verdict, we conclude
that the evidence was legally sufficient to support the jury’s determination that Appellant was in
possession of the contraband. Likewise, having reviewed the record in a neutral light, the
evidence is also factually sufficient to support the conviction. Issue One is also overruled. 
            Issues Three and Four challenge several aspects of the trial court’s charge to the jury. 
However, as Appellant admits in his brief, neither of the alleged errors were objected to by his
trial counsel. When potential error in a jury charge is not objected to at trial, the appellant must
claim the error was “fundamental” and the reviewing court is limited to an “egregious harm”
analysis. See Oursbourn v. State, 259 S.W.3d 159, 174 (Tex.Crim.App. 2008). “Egregious
harm” occurs when the error effectively denies the defendant his right to a fair and impartial trial. 
See Allen v. State, 253 S.W.3d 260, 264 (Tex.Crim.App. 2008). In determining whether such
harm has occurred, the reviewing court should consider: (1) the entire jury charge; (2) the state
of the evidence, including the contested issues and the weight of the probative evidence; (3) the
final arguments of the parties; and (4) any other relevant information revealed by the record of
the trial as a whole. Id.
            In Issue Three, Appellant contends that the trial court erred by including a modified
“Allen charge” as part of the instructions included in the charge at both the guilt/innocence and
punishment phases of trial. The challenged instruction was included in both charges as follows: 
Concerning your manner of deliberation:
 
A.In order to return a verdict, each juror must agree thereto.
 
B.Jurors have a duty to consult with one another to deliberate with a view of
reaching an agreement, if it can be done, without violence to individual
judgment.
 
C.Each juror must decide the case for themselves, but only after an impartial
consideration of the evidence with their fellow jurors.
 
D.In the course of deliberations, a juror should not hesitate to re-examine his
or her own views and change his or her opinion if convinced it is
erroneous.
 
E.No juror should surrender his or her honest conviction as to the weight or
effect of the evidence solely because of the opinion of fellow jurors, or for
the mere purpose of returning a verdict.

            In this instance, Appellant argues that paragraphs D and E were premature, and
constituted jury coercion. “Allen” type instructions are generally given in response to jury
communications indicating deadlock. See Jackson v. State, 753 S.W.2d 706, 712 (Tex.App.--San Antonio 1988, pet. ref’d). To prevail on a complain that an Allen charge is coercive, an
accused must demonstrate that jury coercion or misconduct likely occurred, or occurred in fact. 
West v. State, 121 S.W.3d 95, 108 (Tex.App.--Fort Worth 2003, pet. ref’d). An Allen charge is
unduly coercive only if it pressured jurors into reaching a particular verdict, or improperly
conveys the trial court’s opinion of the case. Id. at 107-08.
            Appellant cites to this Court’s opinion in Love v. State, in which we discouraged the use
of this type of instruction prior to the beginning of deliberations.


 909 S.W.2d 930, 936-37
(Tex.App.--El Paso 1995, pet. ref’d)(noting that this type of instruction is “best suited for those
situations in which the jury becomes deadlocked.”). However, in the conclusion of Love, this
Court determined the instruction given was non-coercive. Id. at 937. Therefore, while the Court
discourages the pre-deliberation use of such an instruction, its inclusion in the charge did not
constitute an abuse of discretion by the trial court. Id.
            In the present case, the instruction was given as part of the court’s main charge at both
phases of trial. However, there is extensive authority in Texas approving of these types of
instructions and holding that they are not coercive. See Arrevalo v. State, 489 S.W.2d 569, 571-72 (Tex.Crim.App. 1973); Love, 909 S.W.2d at 936-37. In addition, in this particular set of
instructions, paragraphs A through C serve to further the non-coercive nature of the latter
paragraphs. See Love, 909 S.W.2d at 936 n.6. Finally, there is no evidence, or indication from
the record, that the instructions pressured the jurors to reach a particular decision, or
communicated the trial court’s opinion of the case. Therefore, the inclusion of the challenged
instructions did not egregiously harm Appellant, and Issue Three is overruled.
            In Issue Four, Appellant contends that the court’s written charge to the jury, at the guilt-innocence phase of trial did not satisfy the requirements of Texas Code of Criminal Procedure
Article 36.14, because the written charge failed to recite: (1) the elements of the offense of
possession of a controlled substance with intent to deliver; (2) the definitions of the required
mental states of intent and knowledge; (3) the definition of possession; and (4) the election of a
defendant not to testify.
            Article 36.14 of the Texas Code of Criminal Procedure requires, in relevant part: 
[I]n each felony case and in each misdemeanor case tried to a court of record, the
judge shall, before the argument begins, deliver to the jury . . . a written charge
distinctly setting forth the law applicable to the case . . . .

Tex.Code Crim.Proc.Ann. art. 36.14 (Vernon 2007).

            Having reviewed the court’s written charge in this case, we note that the version
originally filed as part of the clerk’s record on appeal is missing three pages. This Court, on its
own motion, directed the clerk of the trial court to supplement the clerk’s record with a complete
version of the trial court’s written charge. See Tex.R.App.P. 34.5(c)(on its own motion,
appellate court may direct the trial court clerk to prepare, certify, and file a supplement
containing an item omitted from the record). It is apparent based on the complete version of the
written charge, as well as on the trial court’s recitation of the charge prior to argument, that the
jury was duly instructed as to the elements of the offense Appellant was charged with, the
definitions of the applicable mental states for the offense, the applicable definition of
“possession,” and the effect of Appellant’s election not to testify. Accordingly, Appellant has
failed to demonstrate a violation of Article 36.14, and has not established he was egregiously
harmed by charge error. Issue Four is overruled.
            Having overruled all of Appellant’s issues, we affirm the trial court’s judgment. 

March 31, 2010
DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)