**AFFIRM; and Opinion Filed March 13, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00958-CR
### No. 05-12-00959-CR

### GREGORIO DIAZ LOPEZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause Nos. F09-40834-K and F09-40835-K**

## MEMORANDUM OPINION
Before Justices Francis, Lang-Miers, and Lewis
Opinion by Justice Lewis

A jury convicted appellant Gregorio Diaz Lopez of two offenses: knowingly possessing, with intent to deliver, four or more but less than 200 grams of both heroin and cocaine. The trial court assessed his punishment at five years' confinement for each offense. In three issues, appellant challenges the sufficiency of the evidence supporting his convictions and the assessment of court costs against him.[1] We affirm the trial court's judgments.

## Background

Police officers received a tip about drug activity at a Mesquite apartment and set up surveillance around the complex. Appellant and his cousin, George Diaz, Jr., left that apartment

---

[1] Appellant initially raised two additional issues concerning the adequacy of what he called the "accomplice-witness testimony" offered by his witness, George Diaz, Jr. The State cited authorities establishing the testimony of appellant's own witness was not accomplice-witness testimony that required corroboration. *See, e.g. Johnson v. State*, 853 S.W.2d 527, 531 (Tex. Crim. App. 1992). In his reply brief, appellant acknowledged the State's legal argument was correct, so we need not address these issues further.

at approximately nine o'clock that night. The officers stopped the two men, who told officers they were on their way to the gym to lift weights. Officers obtained consent to search the men's persons. The officers found marijuana and heroin in Diaz's pockets; they did not find any drugs in appellant's possession. Shortly thereafter, a third man left the apartment, and police entered the apartment to perform a protective sweep. They determined that only this third individual had been present in the apartment when appellant and Diaz left and that no one else had entered in the meantime. Police discovered an open shoe box on the kitchen counter that contained a digital scale, a razor blade with heroin residue on it, small empty baggies, and a baggie containing marijuana. The police then obtained a search warrant and found large amounts of heroin and cocaine throughout the apartment. In one bedroom they found a duffel bag containing appellant's personal belongings and just under six ounces of heroin. Officers also discovered appellant's driver's license in the apartment kitchen.

Appellant was arrested and charged with possession with intent to distribute heroin and cocaine. Police officers involved in the surveillance and search testified at appellant's trial. Diaz testified for the defense. He acknowledged that he and others kept drugs in the Mesquite apartment and dealt those drugs on a daily basis. Diaz testified, however, that he had an agreement with the other occupants of the apartment to keep the drugs hidden during the time appellant was staying there. Diaz testified appellant knew nothing about the drugs in the house or the sales taking place connected with those drugs. The jury found appellant guilty on both counts, and the trial court assessed his punishment at a term of five years for each offense.

In this Court, appellant raises three issues, challenging the sufficiency of the evidence supporting the jury's verdicts and the trial court's assessment of costs.

**Sufficiency of the Evidence**

In his first issue, appellant contends the evidence is legally insufficient to support his conviction because there are no affirmative links connecting him to the contraband. Thus, he argues, there was no evidence he unlawfully possessed the drugs. To prove unlawful possession of a controlled substance, the State must prove that the accused exercised control, management, or care over the substance, and that the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). The State's evidence may be direct or circumstantial, but it must establish that the accused's connection with the drug was more than just fortuitous. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). "This is the so-called 'affirmative links' rule which protects the innocent bystander—a relative, friend, or even stranger to the actual possessor—from conviction merely because of his fortuitous proximity to someone else's drugs." *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006) (internal footnote omitted). A defendant's mere presence where drugs are found is insufficient alone to establish the defendant's possession of the drugs. *Id.* at 162. But a defendant's presence or proximity to the drugs, when combined with other evidence, can suffice to establish possession beyond a reasonable doubt. *Id.* Ultimately, the evidence is sufficient if—when the evidence is examined in the light most favorable to the judgment—any rational trier of fact could have found that appellant possessed the contraband beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Because appellant did not have exclusive possession of the apartment where the contraband was found, the State must connect him to the heroin and cocaine found there. *See Brown,* 911 S.W.2d at 748. This Court has looked to a nonexclusive list of possible links that can make that connection: (1) whether the defendant was present when the drugs were found; (2) whether the drugs were in plain view; (3) the defendant's proximity to and the accessibility of

the drugs; (4) whether the defendant was under the influence of drugs when arrested; (5) whether the defendant possessed other contraband; (6) whether the defendant made any incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of drugs; (10) whether the defendant owned or had the right to possess the place where the drugs were found; (11) whether the place the drugs were found was enclosed; (12) the amount of drugs found; (13) whether the defendant possessed weapons; and (14) whether the defendant possessed a large amount of cash. *Taylor v. State,* 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.); *Porter v. State,* 873 S.W.2d 729, 732 (Tex. App—Dallas 1994, pet. ref'd). We are less concerned with the number of links than with the degree to which the links tend to connect the defendant to the contraband. *See Evans*, 202 S.W.3d at 162; *Taylor,* 106 S.W.3d at 831.

In this case, a number of these factors, alone and in combination, tend to connect appellant affirmatively to the drugs found in the apartment. Employing the numbers associated with the factors listed above, we consider the following evidence: (1) appellant was present when heroin was found in his cousin's pocket, and appellant had left the apartment only minutes before heroin and cocaine were found there; (2) drugs were in plain view in the apartment shortly after appellant exited; (3) appellant was staying at the apartment where the drugs were found, and almost six ounces of heroin was found in the closet of the specific bedroom where evidence indicated he was staying; (5) police also found marijuana and drug paraphernalia in the apartment; (9) officers testified to smelling both marijuana and heroin in the apartment; (10) appellant resided at, and thus had the right to possess, the place where the drugs were found; (11) the apartment, of course, was an enclosed area; significantly, it was a relatively small area— estimated in police testimony to contain approximately 800 square feet; (12) testimony

confirmed the testing of more than 112 grams of heroin and more than four grams of cocaine seized in this case.

Other evidence also supports a finding appellant exercised some control over the drugs. Diaz admitted carrying two ounces of heroin when stopped, worth $2600; he conceded he had arranged to sell the heroin when he and appellant arrived at the gym. There was testimony that drug dealers, especially juveniles like Diaz, were often accompanied by individuals who could provide protection to the dealer himself during a sale. Appellant's driver's license was found in a kitchen drawer, in close proximity to drugs and paraphernalia being used that night.

There was conflicting testimony at trial concerning how long appellant had been staying at the apartment: officers said appellant told them he had been at the apartment for a month; Diaz testified appellant had been there only six days. However, Diaz testified he conducted between fifteen and thirty drug sales a day and that "on a good day," he would take in $15,000. Given the presence of such a large amount of contraband and the large amount of drug activity going on around him, a jury could have inferred appellant's knowledge of those drugs and that activity, even if he had only been present for six days.

We conclude the direct and circumstantial evidence sufficiently links appellant to the heroin and cocaine seized in this case. Viewing the evidence in the light most favorable to the judgments, we conclude a rational juror could have found beyond a reasonable doubt that appellant exercised care, custody, and management over the seized drugs and knew they were contraband. *See Jackson*, 443 U.S. at 319. Accordingly, we overrule appellant's first issue.

### Court Costs

In his two remaining issues, appellant argues the evidence is insufficient to support the trial court's assessment of court costs against appellant in both cases because the clerk's records do not contain appropriate written bills of cost. This Court obtained supplemental clerk's

records of the costs in both cases below, and appellant objected to those supplements. The record before us contains the bills of costs. Appellant's complaints have been addressed and rejected. *See Johnson v. State*, No. PD-0193-13, 2014 WL 714736, at *4–8 (Tex. Crim. App. Feb. 26, 2014); *Coronel v. State*, 416 S.W.3d 550, 555–56 (Tex. App.—Dallas 2013, pet. ref'd). We overrule appellant's objections to the supplemental records, and we decide his final two issues against him.

We affirm the trial court's judgments.

/David Lewis/
DAVID LEWIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

120958F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

GREGORIO DIAZ LOPEZ, Appellant

No. 05-12-00958-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas

Trial Court Cause No. F09-40834-K.

Opinion delivered by Justice Lewis.

Justices Francis and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 13th day of March, 2014.

/David Lewis/

DAVID LEWIS
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

GREGORIO DIAZ LOPEZ, Appellant

No. 05-12-00959-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas

Trial Court Cause No. F09-40835-K.

Opinion delivered by Justice Lewis.

Justices Francis and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 13th day of March, 2014.

/David Lewis/

DAVID LEWIS
JUSTICE