**Shirley Jean WOODARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–09–00134–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 10, 2011.

Gael Plauche Harrison, Navasota, TX, for Appellant.

Elton Mathis, District Attorney, Hempstead, TX, for Appellee.

Panel consists of Justices JENNINGS, ALCALA, and SHARP.

## OPINION

ELSA ALCALA, Justice.

Appellant, Shirley Jean Woodard, was convicted of the offense of possession of a controlled substance in an amount less than a gram (Count I), *see* TEX. PENAL CODE ANN. § 38.11(d)(1) (West Supp. 2010) and the offense of possession of a controlled substance while in a correctional facility (Count II), *see* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a)-(b) (West 2010). Appellant appealed both convictions to this Court. Appellant's appeal of her conviction for Count I was assigned appellate cause number 01–09–00133–CR, and appellant's appeal of her conviction for Count II was assigned appellate cause number

01–09–00134–CR. On December 9, 2010, we issued a single opinion as to both appellate cause numbers, but we issued separate judgments. We affirmed appellant's conviction for Count I in appellate cause number 01–09–00133–CR, but we reversed appellant's conviction for Count II in appellate cause number 01–09–00134–CR.

Neither party filed a motion for rehearing in either appellate cause number. Appellant did not file a petition for discretionary review of our opinion and judgment affirming her conviction for Count I in appellate cause number 01–09–00133–CR. On February 17, 2011, we issued mandate in appellate cause number 01–09–00133–CR.

On January 10, 2011, the State filed a petition for discretionary review of our opinion and judgment in appellate cause number 01–09–00134–CR reversing appellant's conviction for Count II. In its petition, the State cited to new authority that had not been presented in its original brief with this Court. We have the authority to withdraw our previous opinion and replace it with a modified opinion pursuant to Rule 50 of the Texas Rules of Appellate Procedure. See Tex.R.App. P. 50. Accordingly, under Texas Rule of Appellate Procedure 50, we withdraw only the portion of our December 9, 2010 opinion concerning appellate cause number 01–09–00134–CR, which pertained to appellant's conviction for Count II (possession of a controlled substance while in a correctional facility), and we substitute this opinion as the sole opinion for appellate cause number 01–09–00134–CR. Also, we withdraw our December 9, 2010 judgment in appellate cause number 01–09–00134–CR, and we replace it with this judgment.[1]

In appellate cause number 01–09–00134–CR, appellant appeals a judgment convicting her for possession of a controlled substance while in a correctional facility (Count II). See Tex. Penal Code Ann. § 38.11(d)(1) (West Supp. 2010). In her sole issue concerning this appeal, appellant challenges the legal sufficiency of the evidence to establish possession of a controlled substance while in a correctional facility. We conclude that the evidence is insufficient with respect to Count II. We reverse the judgment in appellate cause number 01–09–00134–CR and render a judgment of acquittal on the charge of possession of a controlled substance while in a correctional facility.

## Background

In September 2007, an unknown person called the Hempstead Police Department to report a disturbance in progress at a local residence. Officer O'Brien went to the residence where he met appellant and Lincoln Hanks who were arguing with each other. Hanks told the officer he was appellant's common-law husband. Hanks had a wounded lip and a cut on the right side of his face, injuries consistent with his having sustained an assault. Appellant, who was very upset with Hanks, bore no sign of injury. Officer O'Brien informed appellant that she was under arrest for domestic violence.

---

1. Because no petition for review was filed with respect to Cause No. 01–09–00133–CR (relating to Count I), we have no jurisdiction to modify the judgment or mandate issued in that case and have not done so. See Tex. R.App. P. 19.1. Furthermore, because we no longer have plenary power over the appeal in Cause No. 01–09–00133–CR, we have left the December 9, 2010 opinion intact as it relates to that appeal. This opinion only substitutes for the portion of the December 9, 2010 opinion that pertained to Cause No. 01–09–00134–CR (relating to Count II). We also order that the prior opinion in Cause No. 01–09–00133–CR, not be published. See Tex.R.App. P. 47.2(b).

Officer O'Brien transported appellant to the Waller County Sheriff's Department Jail. Appellant's purse was transported with appellant from her house to the jail. Officer O'Brien asked appellant if she had any contraband on herself or her person. Appellant answered, "No."

As part of the booking process, Officer O'Brien began to fill out an inventory of appellant's possessions. The purpose of the inventory was to account for the inmate's valuables held by the jail. The inventory sheet signed by the inmate acknowledges that all the property is there before the property is secured at the jail. Appellant's possessions included her clothing and her purse.[2] Appellant could not carry the purse inside the jail because she was handcuffed.[3] The testimony at trial was that Officer O'Brien had possession of the purse when he brought appellant into the jail[4] and would later transfer posses-

sion of it to the jail staff to hold during her incarceration.[5]

When a person "comes to the jail" with property, the property goes into a property bag for storage and she "don't [sic] have access to it without someone else being present or seeing an inventory sheet or anything like that." The testimony at trial was that the person may have access to that property only if it is prescription medication.[6]

While taking inventory of the contents of appellant's purse, Officer O'Brien found a small, black notebook. Inside the notebook, he found a compartment housing a clear bag containing a white powder, which he believed to be cocaine. Upon this discovery, appellant denied that the bag and its contents were hers. Later chemical analysis confirmed that the powder contained cocaine.

2. The record shows the following:
   [State's attorney:] What items ... did Ms. Woodard have on her?
   [O'Brien:] She had her clothes and then she had a purse.
   [State's attorney:] Had you asked her to bring her purse to the jail?
   [O'Brien:] No.

3. The record shows the following:
   [Appellant's attorney:] She wouldn't be allowed to have that purse or anything in it while she's inside the jail?
   [O'Brien:] She can't carry it. She's in handcuffs, sir.

4. The record shows the following:
   [Appellant's attorney:] When they come into the booking in area, though, they are in police custody, are they not?
   [Young:] Yes, they are.
   [Appellant's attorney:] Okay. And so how much care and control would they have over their property at that point?
   [Young:] The officer's in possession of the actual property that's logged or taken in by the officer.

5. [State's attorney:] What's the purpose if you know about—for an inventory?

[O'Brien:] So none of their property gets missing, so its accountable up to when I brought her in and then I believe the jail staff is then. Therefore, once they sign that inventory sheet it is admitting that it's all there and then it's put into her property there at the jail.

6. The record shows the following:
   [Appellant's attorney:] And Deputy Young ... are you familiar with jail procedure?
   [Young:] Yes.
   [Appellant's attorney:] Okay. So when a person comes into the jail are they allowed to have any of their personal possessions with them?
   [Young:] The only thing that's allowed that's brought into the jail facility that I have seen is prescription medications that are brought in on a—the nurse would have to accept it and, you know, make sure it's valid.
   [Appellant's attorney:] So everything else goes into the property bag and stored away and they don't have access to it without someone else being present or seeing an inventory sheet or anything like that?
   [Young:] Yes, that's true.

At trial, appellant, who has been diagnosed as having bipolar disorder, testified that she constantly picks up and keeps in her purse anything on the ground that catches her eye, including things she does not use. Appellant explained that she does not think about what she is doing when she picks things up and that, on this particular occasion, did not consider whether the bag might have contained cocaine. Appellant testified that she has never used powder cocaine but that she previously had a drug problem with crack cocaine. Appellant testified that she quit smoking crack cocaine about a year prior to trial, which was approximately five months after her arrest.

Deputy Young, a narcotics agent familiar with street drug practices, testified that the bag contained about three doses of cocaine, which could be smoked, injected, or inhaled. He also testified that, in his experiences, the typical user of cocaine usually would not throw away three doses.

The grand jury of Waller County indicted appellant on two counts. Count I charged that appellant "intentionally or knowingly possess[ed] a controlled substance, namely, cocaine, in an amount of less than a gram." Count II charged that appellant "intentionally or knowingly possess[ed] a controlled substance, namely, cocaine, while in a correctional facility, to-wit: Waller County Jail." Appellant pleaded not guilty and proceeded to a jury trial. The jury found appellant guilty on both counts and assessed punishment for Court I at 180 days in a state jail facility of the Texas Department of Criminal Justice and punishment for Count II at four years imprisonment in the Institutional Division of the Texas Department of Criminal Justice and a $500 fine.

### Sufficiency of the Evidence

Premised on two different periods of time during the same day, appellant was charged with two counts of possession of the same cocaine found in her purse. First, she was charged with possession of cocaine weighing less than a gram based the period of time during which she possessed her purse at her house prior to her arrest. We have upheld that conviction in Cause No. 01–09–00133–CR (relating to Count I) in the portion of the December 9, 2010 opinion that remains intact, concerning that appeal and its accompanying judgment. Second, she was charged with possession of the same cocaine while in a correctional facility based on the period of time during which she was being booked into the Waller County Jail with her purse. This conviction in Count II only is the subject of this opinion.

### A. Standard of Review

An appellate court reviews legal and factual sufficiency challenges using the same standard of review. *Green v. State,* No. PD–1685–10, 2011 WL 303818, at *1 (Tex.Crim.App. Jan. 26, 2011) (not designated for publication); *Ervin v. State,* 331 S.W.3d 49, 52–56 (Tex.App.-Houston [1st Dist.] 2010, pet. denied) (construing majority holding of *Brooks v. State,* 323 S.W.3d 893, 894, 913 (Tex.Crim.App.2010)). Under this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 361, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970); *Laster v. State,* 275 S.W.3d 512, 517 (Tex.Crim.App. 2009); *Williams v. State,* 235 S.W.3d 742, 750 (Tex.Crim.App.2007). Viewed in the light most favorable to the verdict, the evidence is insufficient under this standard

in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson,* 443 U.S. at 314, 318 n. 11, 320, 99 S.Ct. at 2786, 2789 & n. 11; *Laster,* 275 S.W.3d at 518; *Williams,* 235 S.W.3d at 750. Additionally, the evidence is insufficient as a matter of law if the acts alleged do not constitute the criminal offense charged. *Williams,* 235 S.W.3d at 750.

If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida,* 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982). An appellate court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim. App.2007) (citing *Hooper v. State,* 214 S.W.3d 9, 16–17 (Tex.Crim.App.2007)). In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* (citing *Hooper,* 214 S.W.3d at 13). An appellate court presumes that the factfinder resolved any conflicting inferences in favor of the verdict and defers to that resolution. *See Jackson,* 443 U.S. at 326, 99 S.Ct. at 2793; *Clayton,* 235 S.W.3d at 778. An appellate court also defers to the factfinder's evaluation of the credibility of the evidence and weight to give the evidence. *See Williams,* 235 S.W.3d at 750.

### B. Analysis

■ A person commits an offense if she possesses a controlled substance while in a correctional facility or while on property owned, used, or controlled by a correctional facility. TEX. PENAL CODE ANN. § 38.11(d)(1). A county jail is a "correctional facility." *Id.* §§ 1.07(a)(14)(A) (West Supp. 2010). A person possesses an object if she has actual care, custody, control, or management of that object. TEX. PENAL CODE ANN. § 1.07(a)(39). Because the penal code does not define "actual care, custody, control, or management," we refer to the rules of grammar and common usage to construe the terms. TEX. PENAL CODE ANN. § 1.05(b); TEX. GOV'T CODE § 311.011(a), (b).

Viewing the evidence in a light most favorable to the jury's verdict, the evidence shows

- appellant knew about and owned the cocaine that was in her purse;
- appellant carried the purse from her house to the patrol car;
- because appellant was handcuffed before she entered the jail, the officer carried the purse into the jail;
- the officer had actual care and custody of the purse while it was in the jail; and
- the officer inventoried the contents of the purse in appellant's presence.

To determine whether the evidence is sufficient to establish appellant's guilt for this offense, we address whether, while in a correctional facility, she had (1) actual care or custody of the cocaine, (2) control or management of the cocaine, and (3) joint possession of the cocaine.

### 1. Actual Care or Custody

As Deputy Young testified, when a person, such as appellant, is brought into the booking area, she is in police custody, and the officer, not the person in custody, has actual care and custody of the property that is inventoried and stored. The State

concedes that the record fails to show that appellant had actual care or custody of the cocaine while she was in the correctional facility.

## 2. Control or Management

The State suggests appellant maintained control or management of the cocaine in her purse while she was in the jail. "Control" means to exercise authority over, direct, or command. WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY 398 (2nd ed. 1983). "Manage" means to direct or conduct, "to get (a person) to do what one wishes, especially by skill, tact, flattery, etc.," or "to bring about by contriving." *Id.* at 1093. The State contends appellant's control and management of the purse is shown (a) by appellant's decision to bring the purse to the jail, (b) by her having a greater right to possess the purse than the officers when she was at the intake part of the jail, and (c) by her ownership of the cocaine.

### a. Decision to Bring Purse

The State does not deny that appellant was handcuffed before she was brought into the jail and that Officer O'Brien transferred her purse with her to the jail, but asserts that appellant exercised control over the purse while at the jail. The State's purported evidence of appellant's control over the purse at the jail is Officer O'Brien's testimony that he did not ask appellant to bring the purse with her. That testimony, however, is not evidence that appellant asked Officer O'Brien to bring her purse to the jail. Rather, that evidence shows merely that appellant alone made the decision, when she was still at her house, to bring the purse. Appellant's lone decision when she was at her house to bring her purse with her is no evidence that she exercised control or management over the purse after Officer

O'Brien carried it into the jail. Appellant's exercise of control and custody over the purse prior to her arrival at the jail does not satisfy the State's burden of proof as to possession after her arrival at the jail. Contrary to the State's argument, the element for this offense is not whether appellant had "a plan ... to retain control and management of her cocaine while in jail" but, rather, whether appellant actually had control or management of the cocaine while at the jail.

### b. Greater Right to Possession

The State's petition for review raises a new assertion that "the only question is who controlled the presence of the drugs in the jail prior to the inventory[,]" explaining that the jailers did not have a greater right of possession of the cocaine until it was discovered at the jail and that while appellant was in the intake part of the jail, she merely had a diminished expectation of privacy but retained control and management of the purse. No evidence supports this suggestion. The record contains no discussion concerning an inmate's expectation of privacy at the intake part of the jail, and the evidence in the record is that appellant had no right to the purse at all while she was in the jail. Deputy Young expressly testified that appellant was not allowed to have access to the purse and that the officer and jail would maintain possession of the purse while it was stored at the jail.

At most, there is evidence that appellant had a right to be present when the purse was inventoried by the police and to sign a sheet acknowledging the contents. Nothing in the record shows appellant could have controlled or managed what the officers did with the purse during the period of time when it was at the intake part of the jail. On this record, the most appellant could do was acknowledge that the

property belonged to her; she could not control the property nor manage it in any way. The evidence is that the property was controlled and managed by the officers in accordance with their inventory procedures for handling property.

### c. Constructive Possession

■ Control may be shown by constructive possession. *Porter v. State*, 873 S.W.2d 729, 734–35 (Tex.App.-Dallas 1994, writ denied) (citing *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App.1985); *Sewell v. State*, 578 S.W.2d 131, 135 (Tex. Crim.App.1979)); *see also Poindexter v. State*, 153 S.W.3d 402, 412 (Tex.Crim.App. 2005) (stating, "The mere fact that a person other than the accused might have joint possession of the premises does not require the State to prove that the defendant had *sole* possession of the contraband, only that there are affirmative links between the defendant and the drugs such that he, too, knew of the drugs and constructively possessed them.") (emphasis in original).

In *Porter*, the Dallas Court of Appeals determined that Porter had possession of the cocaine because the evidence established that, although Porter had not yet taken physical possession of the cocaine, he had just purchased the cocaine and thus had "constructive possession" of the cocaine. *Porter*, 873 S.W.2d at 734. The *Porter* court discussed the concept of constructive possession:

> Although "constructive possession" has not specifically been defined under Texas law, the Court of Criminal Appeals clearly has distinguished it from actual possession of contraband on one's person. The term has also been defined by the federal courts. The Fifth Circuit, for example, defines "constructive possession" to mean the knowing exercise of, or knowing power to exercise, domin-

ion and control over contraband. *United States v. DeLeon*, 641 F.2d 330, 335 (5th Cir.1981); *United States v. Aleman*, 592 F.2d 881, 884 (5th Cir.1979). The Fifth Circuit also recognizes that "constructive possession" may be established by showing *ownership*, dominion or control over contraband. *United States v. Moreno*, 649 F.2d 309, 312 (5th Cir. 1981). Thus, under the federal definition, a defendant may be guilty of possession although he is not exercising actual physical dominion over contraband at the time of his arrest. As long as he has *actual ownership* of contraband or a power to exercise control over contraband, he will be in constructive possession of contraband.

*Id.* (emphasis added).

The *Porter* court, therefore, described a federal court as equating ownership with power to exercise control. The *Porter* court concluded that Porter's payment of money for the cocaine was some evidence that ownership had passed to Porter at the time of the arrest and, "[a]t the very least, Porter had the *power* to exercise control over a rock [of cocaine]." *Id.* at 735 (emphasis in original). We find this case distinguishable from *Porter* because there was no evidence that, while in the jail, appellant "had the *power* to exercise control over" the cocaine. *Id.* (emphasis in original). Thus, while the evidence in *Porter* tended to establish that control of the cocaine was vested with Porter based on his having purchased it, the evidence here does not tend to establish that control of the cocaine was vested with appellant while she was in the jail because, regardless of whether she owned it, she had no power over it. Although the circumstance of ownership could show power to exercise control, here it does not because the record conclusively shows appellant had no

power over the purse when it was in the jail.

### 3. Joint Possession

Possession of contraband need not be exclusive and evidence that shows the accused jointly possessed the contraband with another is sufficient. *McGoldrick*, 682 S.W.2d at 578; *Rodriguez v. State*, 635 S.W.2d 552, 553 (Tex.Crim.App. 1982). "[W]hen the theory of prosecution is that the accused or another acted together in possessing a narcotic drug, the evidence must *affirmatively link* the accused to the contraband in such a manner that it can be concluded that he had knowledge of the contraband as well as control over it." *Martin v. State*, 753 S.W.2d 384, 385 (Tex.Crim.App.1988) (emphasis in original). The issue in this appeal is not whether appellant had knowledge of the contraband in her purse but, instead, whether she had care, custody, control or management over it. A traditional analysis of affirmative links, therefore, is of limited assistance in analyzing this case because that analysis tends to focus on a defendant's knowledge of the contraband.[7]

The State's petition for review contends for the first time that this is a joint possession situation "resolved by cases where one person's physical possession is at the behest of, or in cooperation with, another." The record does not support this characterization. There is no evidence in the record tending to show that Officer O'Brien took possession of the purse at the behest of appellant or in cooperation with her. The only testimony on this issue is Officer O'Brien's testimony that he did not ask her to bring the purse to the jail.

This Court is aware of situations where jails allow inmates to release their property to a third party, but this case does not present such a situation. A decision by an inmate concerning whether and to whom to grant possession of the inmate's property may be consistent with control or management over the property. Here, however, the record is silent as to whether appellant had any ability to control what happened to her property at the jail or any right to request that the property be given to any particular individual. The only evidence in this record is that the police and personnel alone controlled and managed the purse from the time it entered the jail. Although it appears that the State could possibly prove possession under circumstances similar to those present here, the State did not meet its evidentiary burden with respect to actual custody, care, control or management based on the sparse record in this case.

This case is factually distinguishable from other Texas cases upholding convictions for illegal possession of a controlled substance or contraband item in the jail. In those cases and unlike here, there was some evidence that the defendant main-

---

7. The following links may circumstantially establish the sufficiency of the evidence to prove knowing possession: (1) the defendant's presence when a search is conducted, (2) whether the contraband was in plain view, (3) the defendant's proximity to and the accessibility of the narcotic, (4) whether the defendant was under the influence of narcotics when arrested, (5) whether the defendant possessed other contraband or narcotics when arrested, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether the defendant owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether the defendant was found with a large amount of cash, and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 162 n. 12 (Tex.Crim.App.2006).

tained some care, custody, control, or management of the contraband. *See e.g., Short v. State,* 995 S.W.2d 948, 950–52 (Tex.App.-Fort Worth 1999, pet. ref'd) (evidence legally sufficient to support attempted delivery of controlled substance to inmate where defendant, former probationary officer, had two fake marijuana cigarettes in her pocket); *Castillo v. State,* No. 07–06–0027–CR, 2007 WL 270425, at *1–2 (Tex.App.-Amarillo Jan. 31, 2007, pet. ref'd) (not designated for publication) (finding evidence sufficient where defendant possessed drugs in coin purse in his pocket while in jail visitor area).

Although it could have rationally determined that appellant knew about the cocaine in her purse that came with her when she was arrested and placed in the patrol car, we conclude, viewing the evidence in the light most favorable to the verdict, that the jury could not have rationally determined beyond a reasonable doubt that appellant exercised care, custody, control, or management over the cocaine in the purse during the period of time when she was in the booking area of the Waller County Jail. *See Ervin,* 331 S.W.3d at 53–55. Accordingly, we hold that the evidence is insufficient to sustain appellant's conviction for possession of a controlled substance in a correctional facility.

We sustain appellant's sole issue in this appeal.

### Conclusion

We reverse the judgment of the trial court and render a judgment of acquittal with respect to Count II, possession of a controlled substance while in a correctional facility (appellate cause number 01–09–00134–CR).